NOT RECOMMENDED FOR PUBLICATION
File Name: 04a0188n.06
Filed: December 21, 2004

**No. 03-2059**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellant,

v.                               **ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
WALDEMAR HOLZ,**                  **EASTERN DISTRICT OF MICHIGAN**

    Defendant-Appellee.

                                  /

**BEFORE:**    CLAY and GILMAN, Circuit Judges; O'Malley, District Judge.[*]

    **CLAY, Circuit Judge.**  Plaintiff, the United States of America, appeals from the judgment issued by the United States District Court for the Eastern District of Michigan, filed on July 15, 2003, finding Defendant, Waldemar Holz, guilty of subscribing a false tax return, in violation of 26 U.S.C. § 7206(1) and sentencing Defendant to three years probation, with a fine and assessment. For the reasons set forth below, we **AFFIRM** the district court.

**BACKGROUND**

*Procedural History*

---

    [*]The Honorable Kathleen M. O'Malley, United States District Judge for the Northern District of Ohio, sitting by designation.

On August 13, 2002, an indictment was filed, charging Defendant with two counts (which were listed jointly, under one heading) of subscribing a false tax return, in violation of 26 U.S.C. § 7206(1). On February 24-27, 2003, a (four-day) jury trial was conducted. On February 28, 2003, a jury verdict was entered, finding Defendant guilty on both counts. On July 15, 2003, the district court entered a judgment on the verdict of guilty, and sentenced Defendant to three years probation, with a fine ($40,196.34) and assessment ($200).

In sentencing Defendant, the district court had determined that under the sentencing guidelines Defendant's imprisonment range was twelve to eighteen months. However, the district court did not sentence Defendant to a term in prison, but instead the court granted Defendant's motion for a downward departure under U.S. SENTENCING GUIDELINES MANUAL (U.S.S.G.) § 5K2.0, based upon a combination of business impact and family circumstances. The district court ruled that in the aggregate these factors warranted a departure, though neither business impact nor family circumstances would have been sufficient to justify a departure, taken individually.

On August 11, 2003, Plaintiff filed a timely notice of appeal.

### *Substantive Facts*

The Presentence Investigation Report stated that, as "owner and president of DBA Holz Homes and general contractor in a condominium development," Defendant subscribed false 1994 and 1995 Form 1040's. (J.A. at 109.) Defendant failed to report in the purchase price of the condominiums, as reported income, certain work on the condominiums (upgrade work and additions) that was done prior to sale which was paid for separately, in checks written to Defendant (Waldemar Holz), not to Holz Holmes. "Also, HOLZ failed to report income from garages he built

for individuals after they closed on the condominiums and completed other side jobs during the years in question that were not included in his income." (J.A. at 110.)

At the sentencing hearing, Holz's attorney explained the circumstances, many of which were later relied upon by the district court. Defendant's wife had continuing mental health problems for years prior to the trial; these problems were exacerbated by the trail, which precipitated "a nervous breakdown" and a six-day hospitalization for "acute anxiety, depression, suicidal ideation as a consequence of the ordeal that she and her husband had gone through, and his sentencing." (J.A. at 19.) According to Holz's attorney, the treating doctor "indicated that Mrs. Holz needs a family member with her at all times, and that her recovery will take at least a year." (J.A. at 20.)

In addition, one of Defendant's three children, daughter Heidi Holz, had a heart condition that rendered her unable to work and "almost entirely [dependent] on her parents for financial support." (J.A. at 20.) The same physical problem allegedly rendered Heidi Holz unable to care for her mother (Defendant's wife).

As to business impact, Defendant was affiliated with the Plumbrook Greens Townhouse project, "a $9 million construction of a condominium project" that was scheduled for completion in 2004. (J.A. at 20.) Yet the project's completion became jeopardized. One of Defendant's brothers, Roy Holz, the plumbing contractor for the project, suffered a debilitating stroke; "several other master plumbers were hired to continue the project, and they could not comply with the requirements of the building inspectors in that community." (J.A. at 20-21.) Apparently, Defendant himself was eventually able to meet the plumbing requirements. Yet delays caused by Roy Holz's stroke threatened the project, which had already overrun costs, leading lenders to refuse to make

further advances. Defendant's incarceration allegedly would have made completion of the project

far more difficult, thus jeopardizing the $4.5 million investment (of largely borrowed funds) by

Defendant's other brother, Rudolf Holz.

Defendant's attorney also stated:

Of course, if Mr. Holz is incarcerated, Holz Homes as an entity will cease to exist. . . . [T]here are many other innocent persons who had nothing to do with this offense who will be made to suffer. One person, Alen Mocnaj, is an independent contractor who works full time for Holz Homes. He and his wife are the very recent parents of twin children, and in this economy today, Mr. Mocnaj would have a very difficult time becoming quickly reemployed.
. . . .
There are three other employees who have now been temporarily laid off, awaiting the sentencing in this case . . . . All formerly worked full time at Holz Homes, and they all rely on Mr. Waldemar Holz for guidance and training in developing their skills in the building industry, and they relied on Holz Homes for their jobs.

(J.A. at 22.) These assertions by Defendant's counsel are contested by Plaintiff, who disputes the

extent to which any employee or independent contractor relied upon Defendant.

The district court's ruling, which is quoted from below, set forth various specific and general

factual findings, many of which are challenged by Plaintiff. We address the factual disputes in our

discussion below.

## DISCUSSION

The only issue on appeal is the district court's grant of a downward departure to Defendant.

After setting forth the applicable standard of review, we examine this issue.

The district court's legal conclusions and factual findings are reviewed under different

standards. Under the the Prosecutorial Remedies and Tools Against the Exploitation of Children

Today Act of 2003, Pub. L. No.108-21, 117 Stat. 650 ("PROTECT Act"), the standard of review for

the district court's application of the sentencing guidelines to the facts was changed from abuse of discretion to *de novo*. 18 U.S.C. § 3742(e); *United States v. Alfaro*, 336 F.3d 876, 880-81 (9th Cir. 2003) (explaining the change from the prior standard of review). The *de novo* standard applies to appeals (such as the present one) that are conducted after April 30, 2003. *United States v. Mallon*, 345 F.3d 943, 946 (7th Cir. 2003). Under the PROTECT Act, an appeals court "shall accept the findings of fact of the district court unless they are clearly erroneous." 18 U.S.C. § 3742(e).

Under this bifurcated standard of review, the following formulation applies: first, this Court must review the district court's factual findings for clear error; second, under the *de novo* standard, this Court must determine whether the departure was based on a permissible factor (or a combination of permissible factors) and whether, taking into account only those factual findings that were not clearly erroneous, the departure is justified by the facts.

"The defendant bears the burden to prove by a preponderance of the evidence that the circumstances of his or her case warrant a downward departure." *United States v. Lipman*, 133 F.3d 726, 730 (9th Cir. 1998) (discussing U.S.S.G. § 5K2.0).

Only certain grounds for departure are permissible. The guidelines specifically exclude certain factors from ever being considered, alone or in combination:

> Notwithstanding subsections (a) and (b) of this policy statement, or any other provision in the guidelines, the court may not depart from the applicable guideline range based on any of the following circumstances:
> (1) Any circumstance specifically prohibited as a ground for departure in §§ 5H1.10 (Race, Sex, National Origin, Creed, Religion, and Socio-Economic Status)
> . . . .
> . . . .
> (6) Any other circumstance specifically prohibited as a ground for departure in the guidelines.

5

*Id.* § 5K2.0(d).

In addition, a district court is "discouraged" but not prohibited from considering certain other factors. These factors may be considered – but only under extraordinary circumstances. Relevant to the present appeal are two such factors, family responsibilities and employment-related contributions to society. *Id.* § 5H1.6 ("Family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted."); *id.* § 5H1.11 ("employment-related contributions . . . are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range.").

Finally, there are factors–none of which is implicated in the instant case–which are specifically encouraged for consideration, under the guidelines. *Koon v. United States*, 518 U.S. 81, 94 (1996), *superseded on other grounds by statute*[1] ("Victim provocation, a factor relied upon by the District Court in this suit, is an example of an encouraged downward departure factor, § 5K2.10 . . . .").

Overall, there are three categories of factors: those where "the Commission [has] forbidden departures based on those features;" those where "the Commission [has] discouraged departures based on those features;" and those where "the Commission [has] encouraged departures based on those features." *Id.* at 95.

Under the sentencing guidelines, a downward departure may be granted based upon any single encouraged factor, or (in extraordinary circumstances) based upon any single discouraged

---

[1]*See* 18 U.S.C. § 3742(e) (providing for *de novo* review of departures).

factor. In addition, a downward departure may be granted based upon a combination of mitigating factors:

> The court may depart from the applicable guideline range based on a combination of two or more offender characteristics or other circumstances, none of which independently is sufficient to provide a basis for departure, only if--
>   (1) such offender characteristics or other circumstances, taken together, make the case an exceptional one; and
>    (2) each such offender characteristic or other circumstance is--
>       (A) present to a substantial degree; and
>       (B) identified in the guidelines as a permissible ground for departure, even if such offender characteristic or other circumstance is not ordinarily relevant to a determination of whether a departure is warranted.

U.S.S.G. § 5K2.0(c).

Here, the district court granted a departure because it found that sentencing Holz to prison would impact his family and his business and that the combination of the family impact and business impact would cause extraordinary harm. At the sentencing hearing, the district court stated:

> I would indicate that it is the combination of factors here, not any one factor individually which convinces me that a downward departure is warranted.
> First, as outlined by Mr. Harrison and supported by exhibits which include medical records of Mrs. Holz, she is in precarious mental health, she suffered a nervous breakdown, she had suicidal ideation, and has been unable to function on her own particularly in the last several months, and although the government suggests that's not unusual in a white collar case, different people react differently. I certainly have seen a fair number of white collar cases in the 11 and-a-half years that I've been on the bench. Not every spouse suffers a nervous breakdown, not every child has a heart condition. I believe that the medical records submitted with respect to Mrs. Holz indicate that she does need ongoing support and care which her husband is uniquely able to provide, particularly given that her daughter has her own physical limitations which preclude her from really stepping in and taking over her care.
> In addition, not only would Mr. Holz' business disintegrate, but all of the people who are involved in the Plumbrook project would suffer similar problems. There are many people depending on that project. There is no one, apparently, able to take it over. Many independent contractors in addition to the employees of Holz Homes would be affected by this. I want to be more specific about it, too.

7

The defendant has his brother Roy Holz' contractual obligations which he has taken on responsibility for, in addition to the plumbing contracting. That's Mr. Rudolph Holz' obligation. All of those would affect many people and many other jobs, and I think that the combination of those factors take it outside of the guidelines of criminal tax fraud cases, and white collar cases generally.

(J.A. at 32-33.)

On appeal, the government argues that the grant of the departure was erroneous. To make this argument, the government impugns the district court's reasoning as to both family impact and business impact; in addition, the government challenges the district court's factual findings, its application of the law to the facts, and its consideration of business impact. The government's argument is structured in five parts. First, regarding family impact, the government argues that Defendant's incarceration would not place an atypical burden on Defendant's wife. Secondly, the government avers that the incarceration would not place an atypical burden on Heidi Holz (Defendant's daughter). The third argument is that the district court was forbidden from considering harm to Defendant's business. Fourth, the government argues that Defendant's incarceration would not cause atypical harm to third parties. Finally, the government argues that, in combination, the various impacts are not exceptional, as is required for a departure. These arguments can be taken in order.

### 1. Family impact: Defendant's wife

The government contests the district court's factual finding that Defendant was uniquely able to provide for his mentally ill wife. The government argues that this finding was clearly erroneous, contending that "[t]here is no evidence in the record to support a conclusion that defendant provides an irreplaceable care or support to his wife." (Plaintiff's Br. at 16.) The government argues that

either of Holz's two children who live close-by, Heidi Holz and Richard Holz, could serve as an adequate caregiver. The district court noted Heidi Holz's heart condition; the government contests the significance of this health problem, arguing that Defendant's wife does not need care beyond the simple company of a relative, which Heidi could provide. Defendant argues that "other family members have lives, responsibilities, and worries of their own that will prevent them from providing Mrs. Holz with the constant emotional support she needs." (Defendant's Br. at 16.)

Although the evidence here is subject to debate, there is no basis for a ruling that the district court committed clear error. "Clear error occurs only when the panel is left with the definite and firm conviction that a mistake has been committed. If there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Caver v. Straub*, 349 F.3d 340, 351 (6th Cir. 2003) (citations and internal quotation marks and brackets omitted).

The government does not provide grounds for a definite and firm conviction that Heidi Holz could provide Defendant's wife the care that she needs, despite Heidi Holz's own medical problems, or that Richard Holz has the time or ability to provide such care. Rather, the government has simply alleged the viability of a conclusion which is contrary to that reached by the district court. We acknowledge that reasonable minds could differ with respect to the district court's factual findings. But in order to show clear error the government must persuade us that the district court's factual findings were not viable. The government cannot persuade us that the district court committed clear error merely by arguing that factual findings different from those reached by the district court also would have been plausible.

The government also argues that other cases have found that family circumstances more severe than those involved here were not "extraordinary." But this argument lacks merit and relevance. The only case from this Circuit which the government cites is factually inapposite, however. In the case relied upon by the government, *United States v. Reed*, 264 F.3d 640 (6th Cir. 2001), this Court dismissed as factually insupportable the district court's finding that the defendant had a vital role in taking care of her sister's children.[2] The district court's factual conclusions in this case, on the contrary, find meaningful support in the record. Even if the government were correct, moreover, that Defendant's family circumstances legally were insufficiently severe to justify a departure, it is clear that the district court itself concluded that, taken alone, Defendant's family circumstances were not extraordinary. The district court granted the departure based on its determination that the *combination* of family and business circumstances was extraordinary; thus, a conclusion that the family circumstances (taken alone) were not extraordinary would not demonstrate that the departure was erroneous. *See United States v. Marine*, 94 Fed.Appx. 307, 312,

---

[2]In *Reed*, this Court stated:

We agree with the government that, given the fact that Reed does not live with her sister's children nor does she financially support them, her responsibility for her nieces and nephews falls far short of that of a typical parent, much less a typical single parent. Also troubling is the fact that the district court did not address the government's contention that, prior to her criminal conviction, Reed spent one to several months in Jamaica every year. If Reed's family responsibilities permitted her to take extended vacations to Jamaica without the children every year, as it appears from the record, then we do not believe that her responsibility for her sister's children can be characterized as "exceptional," nor can her family circumstances be distinguished from the heartland of cases in which single parents convicted of a crime will be separated from their young children.

264 F.3d at 655.

2004 WL 771851, at \*\*5 (6th Cir. Apr. 8, 2004) (unpublished opinion) ("any departure in this area is susceptible to a divide-and-conquer response in which each individual factor is open to criticism as a ground for departure by itself. The point here, as the district court correctly recognized, is that this aggregation of circumstances presents the rare instance where the constellation of pertinent factors warrants a departure.").

### 2. Family impact: Heidi Holz (Defendant's daughter)

The government attempts to establish that, even if Defendant were incarcerated, Defendant could support Heidi Holz financially, through the use of Defendant's financial assets. This point is irrelevant because the district court did not consider Heidi Holz's financial situation in granting a departure. While it is true that, at the sentencing hearing, Defendant's counsel argued that Heidi Holz had a heart condition that rendered her unable to work, financially dependent on her parents, and unable to care for her mother (Defendant's wife), the district court considered Heidi Holz *only* insofar as to note her inability to care for Defendant's wife. The district court did not rely at all on Heidi Holz's alleged need for financial support in granting the departure now before us.

### 3. Legal permissibility of consideration of business impact

The government argues that any consideration of Defendant's business, Holz Homes, and the Plumbrook project was improper, because business impact falls under the prohibited category of socio-economic status. U.S.S.G § 5K2.0(d)(1) (forbidding any consideration of a defendant's "Socio-Economic Status"); *see also id.* § 5H1.10 (policy statement that Race, Sex, National Origin, Creed, Religion and Socio-Economic Status are not relevant in sentencing). There is a distinction between socio-economic status and business impact, however. The prohibition against consideration

11

of socio-economic status simply precludes a district court from determining that a defendant's prominence, or lack thereof, weighs in favor of, or against, a departure. Yet considerations of business impact necessarily take into account the impact, if any, on innocent third parties, such as other businesses, consumers or clients, and employees.

Although there is often a correlation between business impact and socio-economic status, the prohibition on consideration of socio-economic status does not extend to prohibit all considerations that are correlated with socio-economic status. This much is clear from the fact that various expressly enumerated permissible factors are correlated with socio-economic status. *E.g.*, U.S.S.G. § 5H1.2 (education and vocational skills), § 5H1.5 (employment record), § 5H1.11 (military, civic, charitable, or public service; employment-related contributions; record of prior good works).[3] Since there are certain expressly enumerated permissible factors that are correlated to socio-economic status, it would violate basic canons of statutory construction[4] to read the

---

[3]Indeed, the impact on Defendant's business ventures is a permissible consideration, under U.S.S.G. § 5H1.11, as an "employment-related contribution." Defendant's business ventures provide employment to independent contractors and workers; this is a contribution. Also, Defendant is self-employed, which may be a form of "employment" that is related to other contributions, under U.S.S.G. § 5H1.11. *See generally Carden v. Westinghouse Elec. Corp.*, 850 F.2d 996, 1005 (3d Cir. 1988) ("a self-employed person is 'employed' for the purposes of mitigating damages if establishing a business of his own was a reasonable alternative to finding other comparable employment.") (citations omitted).

But the permissibility of considerations relating to Defendant's business, under U.S.S.G. § 5H1.11, does not in itself demonstrate that such considerations are permissible. A consideration may implicate multiple provisions of the sentencing guidelines; if a consideration is impermissible under any one provision, then this trumps its permissibility under other provisions. *See* U.S.S.G. § 5K2.0(d) ("Notwithstanding subsections (a) and (b) of this policy statement, or any other provision in the guidelines, the court may not depart from the applicable guideline range based on any of the following circumstances . . . .").

[4]Although the federal sentencing guidelines are not a statute, principles of statutory construction govern their interpretation. *United States v. Bahhur*, 200 F.3d 917, 927 (6th Cir. 2000)

prohibition against the consideration of socio-economic status as forbidding consideration of all factors that are correlated with socio-economic status. *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.") (citations and internal quotation marks omitted); *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 377 F.3d 592, 596-97 (6th Cir. 2004) ("a basic rule of statutory construction mandates that a court should read statutes as a whole and not interpret one provision in a way that would render another meaningless or superfluous. *Beck v. Prupis*, 529 U.S. 494, 506, 146 L. Ed. 2d 561, 120 S. Ct. 1608 (2000); *Lake Cumberland Trust v. EPA*, 954 F.2d 1218, 1222 (6th Cir. 1992).").

No ruling by this Court has ever suggested that the prohibition of consideration of socio-economic status renders business impact an impermissible consideration. The government cites *United States v. Rutana*, 932 F.2d 1155 (6th Cir. 1991), in which this Court discussed the relevance of business considerations:

> The guidelines specifically state that a defendant's socioeconomic status is not relevant in the determination of a sentence. Furthermore, even assuming that Rutana's imprisonment would lead to the failure of his business and the loss of his employees' jobs, this fact does not distinguish Rutana from other similar offenders.

---

("In determining the manner in which to apply U.S.S.G. § 2J1.7, we utilize the basic rules of statutory construction because the Guidelines should be interpreted as if they were a statute.") (citation omitted); *United States v. Edge*, 989 F.2d 871, 876 (6th Cir. 1993) ("Defining the word 'plant' for purposes of the Sentencing Guidelines is a question of statutory construction . . . .") (citations omitted).

*Id.* at 958 (citations omitted). Yet *Rutana*'s reasoning simply left open the question of the permissibility of considering business impact. In *Rutana*, we did not conclude that the prohibition against considering socioeconomic status barred *any* consideration of business impact. If this Court had concluded that business impact was an impermissible consideration, it would not have reached the question of whether the impact on the defendant's business rendered the circumstances extraordinary compared to other defendants; an impermissible factor can never be considered, even if it presents extraordinary circumstances. U.S.S.G. § 5K2.0(d). The government also cites a case in which this Court ruled that extraordinary monetary charitable contributions cannot be considered, because such contributions are too closely connected with socio-economic status. *United States v. Tocco*, 200 F.3d 401 (6th Cir. 2000). But *Tocco* does nothing to forbid the consideration of a defendant's business involvements, which involve the expenditure of a defendant's time and energy. *Id.* at 434 ("In assessing the effect of Tocco's community involvement in this case, we believe that much of Tocco's contributions may have consisted of contributions of money, not time and energy."); *United States v. Crouse*, 145 F.3d 786, 790 (6th Cir. 1998) ("charitable work is not a forbidden ground for departure").

In fact, in *United States v. Crouse*, this Court held that a district court's consideration of business impact *was* permissible, because "[c]onsideration of the loss of Crouse's business as a result of the fraud is not categorically prohibited by the Guidelines." *Id.* at 790 (reviewing business impact to determine whether it removed the defendant's case from the heartland of cases). The government argues that *Crouse* did not address the question of whether business impact and socio-economic status are essentially the same thing and, hence, both forbidden considerations – in other

14

words, in that case the government did not make the argument that it makes here. We decline to assume that another panel of this Court was unaware of the scope of its and the district court's authority under the Guidelines.[5] The *Crouse* Court's explicit holding that business impact is not a categorically forbidden factor presupposes that the Guidelines' prohibition on consideration of socio-economic status does not forbid all consideration of business impact.

*Crouse* could not have ruled otherwise on this matter, after the Supreme Court's decision in *Koon v. United States*, 518 U.S. 81 (1996). The First and Second Circuits have both found that business impact is a permissible consideration in considering whether to grant a downward departure. *See United States v. Olbres*, 99 F.3d 28, 36 (1st Cir. 1996); *United States v. Milikowsky*, 65 F.3d 4, 9 (2d Cir. 1995) (affirming a downward departure that was granted on the basis of economic impact on the defendant's business, stating, "While we agree with our sister circuits that business ownership alone, or even ownership of a vulnerable small business, does not make downward departure appropriate . . . , departure may be warranted where, as here, imprisonment would impose extraordinary hardship on employees."); *see also United States v. Patel*, 164 F.3d 620, 1998 WL 650589, at *4 (2nd Cir. Aug. 21, 1998) (affirming the district court's grant of a downward departure based upon a combination of family considerations and business impact). The First Circuit based its reasoning on *Koon*:

> "socio-economic status and job loss are not the semantic or practical equivalents of each other." *Koon* [*v. United States*], 116 S. Ct. [2035,] 2051 [(1996)].

---

[5] 145 F.3d at 789 ("The Guidelines list certain factors which may never form the basis for departure. *See* USSG § 5H1.10 ( . . . socio-economic status)").

> As *Koon* holds that job loss by the defendant resulting from his incarceration cannot be categorically excluded from consideration, we think it follows that job loss to innocent employees resulting from incarceration of a defendant may not be categorically excluded from consideration.

*Olbres*, 99 F.3d at 36. As the First Circuit noted, the Supreme Court's ruling in *Koon* runs contrary to the argument that business impact is an impermissible consideration. In *Koon*, the Supreme Court stated, "a defendant's career may relate to his or her socioeconomic status, but the link is not so close as to justify categorical exclusion of the effect of conviction on a career." 518 U.S. at 110. We agree with the First Circuit's assessment that *Koon* made clear that business impact considerations were not forbidden by the prohibition of consideration of socio-economic status. In light of *Koon*, the *Crouse* Court was left with no choice but to clarify that business impact is a permissible factor.

The prohibition of consideration of socio-economic status does not forbid consideration of business impact. The district court did not err by considering the impact of Defendant's potential incarceration on Defendant's business and the Plumbrook project.

### 4. Factual findings as to business impact

The government argues that even if consideration of Defendant's business and the Plumbrook project was permissible, nevertheless the district court's factual finding that Defendant's incarceration would cause great economic harm to the individuals involved in the Plumbrook condominium project was clearly erroneous.

The district court stated that Holz Homes' employees and independent contractors would lose their jobs if Defendant were to be incarcerated. The government disputes these findings, arguing that Holz Homes would not disintegrate while Defendant was in jail. Alen Mocnaj, the

independent contractor who was working full time for Holz Homes–and whose wife had recently given birth to twins–had indicated that he would not be able to find another job with the same salary. The government states, "There is no explanation in the record why Mocnaj could not just as easily work for another contractor." (Plaintiff's Br. at 28.) Also, the government states that Holz Homes has no employees.

Yet the record indicates that Holz Homes had employees. The government makes no mention of "three other employees who have now been temporarily laid off, awaiting the sentencing in this case . . . . All formerly worked full time at Holz Homes, and they all rely on Mr. Waldemar Holz for guidance and training in developing their skills in the building industry, and they relied on Holz Homes for their jobs." (J.A. at 22) (Defendant's attorney, at sentencing hearing).

As to the Plumbrook project, the government notes the testimony of Rudolf Holz, one of Defendant's brothers, stating that it would be impossible to replace Defendant as the leader of the project. The government nonetheless argues that this assertion is unsupported and that, alternatively, the project was scheduled to be completed by the end of 2003, meaning that Defendant could be incarcerated thereafter, when the appeal was decided.

The government's arguments are not well-taken. As mentioned, the government does not discuss the three employees who were temporarily laid off. Also, the record indicates that Holz Homes–which the government admits is thinly-staffed–had a contract to provide electrical units, furniture, and appliances to Plumbrook Greens Townhouses. This suggests that Defendant's incarceration would have harmed this project. Finally, we could not remand the case simply upon a determination that the circumstances have changed, because the project may have been completed;

17

the government could have suggested to the district court the possibility of a delayed designation pending completion of the project – but there is no indication that this argument was ever made before the district court.

For all of these reasons, we are not left with a definite and firm conviction that the district court erred. As with the government's challenge to the district court's factual findings regarding family impact (discussed above), so too here, the government's argument does not establish clear error. The government invites us to engage in alternative fact-finding, by determining that the record lacked adequate support for Mocnaj's statement that he could not find work with comparable pay with someone other than Defendant and for the testimony of Rudolf Holz that Defendant was irreplaceable as the leader of the project. But we are not free to engage in *de novo* fact-finding.

Perhaps, the district court could have reached findings here consistent with the government's position. Yet, as explained above, that is not enough to prevail on clear error review. Certainly, there is nothing implausible about the notion that a contractor may have a relationship with a businessperson in which a level of compatibility has been established over time, such that the contractor cannot readily find a comparable alternative. Similarly, it is plausible that the leader of a project has amassed knowledge and contacts, in addition to having relevant (potentially rare) skills, which cannot be duplicated; the leader may be irreplaceable. Defendant's argument might well have been stronger with more support; but there is no basis for a finding that district committed clear error in finding that Defendant's incarceration would have caused great economic harm to others.

**5. The combination of the family and business impacts**

18

The government argues that the combination of factors here is not cumulatively sufficient to justify a departure. The guidelines state: "Departures based on a combination of not ordinarily relevant circumstances that are present to a substantial degree should occur extremely rarely and only in exceptional cases." U.S.S.G. § 5K2.0, cmt. n.3(C). A departure is only warranted where the combination of factors removes the case from the "heartland" of cases. *United States v. Sabino*, 274 F.3d 1053, 1078 (6th Cir. 2001).

The question, then, is whether, based upon the factual findings of the district court (which were not clearly erroneous, for the reasons explained above) Defendant is entitled to a downward departure. Accepting the district court's factual findings (as explained above), we review its application of the guidelines to these facts *de novo*.

As recounted and discussed above, the district court found that Defendant is uniquely able to care for his wife, who has documented mental health problems, and that Defendant's wife cannot be cared for by Defendant's daughter (due to her own health problems); the district court also found that Defendant's business ventures, whose success affects numerous other people, are dependent on Defendant's continued involvement.

It is difficult to determine with exact certainty what facts would constitute an "exceptional" or "extremely rare" combination of factors. U.S.S.G. § 5K2.0, cmt. n.3(C). These terms are quite vague; also, there is a dearth of guiding precedent, because the *de novo* standard of review is relatively new, and because this Court does not review the substantive basis of district courts' *denials* of motions for a downward departure, under U.S.S.G. § 5K2.0. *E.g.*, *United States v. Ridge*, 329 F.3d 535, 545 (6th Cir. 2003) (regarding U.S.S.G. § 5K2.0, "we do not review a district court's

refusal to grant a downward departure, unless the court erroneously believed that it did not have the authority to depart downward.") (citations omitted).

We know of no case that is squarely on-point with the combination of family and economic impact in the present case. A departure for a combination of family and economic impact was affirmed in *United States v. Patel*, 164 F.3d 620, 1998 WL 650589 (2d Cir. Aug. 21, 1998) (unpublished opinion). But *Patel* provides little guidance, due to the abuse of discretion standard of review that was in place at the time the case was decided; the appeals court largely deferred to the sentencing expertise of the district court. *Id*. at *4 ("district courts have an 'institutional advantage over appellate courts' and a '"special competence"' in sentencing matters. *See Koon v. United States*, 518 U.S. at 98-99 (1996).").

In the absence of cases with similar combinations of family responsibilities and business impact, the best approach is to, first, separately assess the standards governing family circumstances and business impact and, second, determine whether, when aggregated, Defendant's family circumstances and the impact his incarceration would have on his business support the downward departure. Regarding family considerations, various factors are set forth in U.S.S.G. § 5H1.6, cmt. n.1. Looking at these factors, there is no indication that Defendant's family was involved in the offense (*id.* § 5H1.6, cmt. n.1(A)(ii)) or was endangered by the offense (*id.* § 5H1.6, cmt. n.1(A)(iii)). Thus, two of the factors relating to the offense do not disfavor a departure. As to caretaking (*id.* § 5H1.6, cmt. n.1(B)), the district court found that Defendant's wife would suffer a loss of essential caretaking, if Defendant were incarcerated. The mental illness of Defendant's wife and the heart ailment of Heidi Holz, who appears to be the person besides Defendant who is most

20

likely best situated to care for Defendant's wife, present individual circumstances that may not be exceptional taken individually but which are quite rare, when aggregated. *See United States v. Marine*, 94 Fed.Appx. 307, 311-12, 2004 WL 771851, at **5 (6th Cir. Apr. 8, 2004) (unpublished opinion) (affirming, on *de novo* review, the district court's ruling that multiple family circumstances, none of which was exceptional taken alone, were exceptional in the aggregate, in demonstrating that the defendant was an irreplaceable caregiver to her children). In the present case, Defendant's family circumstances weigh in favor of a departure, even if, if considered alone, they might not be sufficient to justify one. We thus proceed to an assessment of business impact.

Just as the family considerations favor a departure, so too do the business impact considerations. In *United States v. Milikowsky*, 65 F.3d 4, 9 (2d Cir. 1995), on *de novo* review, the Second Circuit affirmed a downward departure on the basis of business impact. In that case, the defendant was a businessperson, involved in steel trading; for a violation of the Sherman Act through price-fixing, the court departed downward from a sentence of eight-to-fourteen months, instead sentencing the defendant to two years probation, six months home confinement, a fine, and community service, with no prison time. *Id.* at 5-6. Although the defendant argued for a departure based on family circumstances and business impact, the court granted the departure solely based on business impact. *Id.* at 6. There are differences between *Milikowsky* and the instant case. In the instant case only a handful of employees would lose work if Defendant were incarcerated, as opposed to the 150 to 200 employees in the *Milikowsky*. *Id.* at 9. Also, the amount of money at stake here is less. The failure of the Plumbrook project would expose bank creditors and Rudolf

Holz to a combined loss of $4.5 million dollars.[6] Estimates of the project's total cost and value are at $9 million. In *Milikowsky* larger amounts were at stake, as the debt alone was $20 million. 65 F.3d at 9. Yet, there are also similarities between the cases: in the present case, as in *Milikowsky*, 65 F.3d at 9, the defendant was found to be indispensable to a business or project with employees and large financial obligations. The economic considerations here are similar to those in *Milikowsky*, where business impact was the *sole* grounds for a departure, as opposed to the combination of family circumstances and business impact, as is the case here.

We find that family circumstances and business impact are each "present to a substantial degree." USSG § 5K2.0(c). Furthermore, we conclude that the likely impact of Defendant's incarceration on his family, and its likely impact on his business, "taken together, make [this] case an exceptional one." *Id*. We therefore hold that the downward departure was not erroneous.

## CONCLUSION

For the aforementioned reasons, we **AFFIRM** the judgment of the district court.

---

[6](J.A. at 20) (Defendant's counsel stated, "Waldmar Holz' other brother, Rudolph Holz, has literally invested everything he has in this project. He has invested $4.5 million in personal but mostly borrowed funds for this project."); *see also* (J.A. at 71) (Rudolf Holz's statement that "[t]here have been considerable cost over-runs on some parts of the project. So far the bank has provided the extra funding for the over-runs.").

No. 03-2059

**RONALD LEE GILMAN, Circuit Judge, dissenting.** Waldemar Holz is a general contractor who was convicted of tax evasion for failing to report $188,652 in income that he received for upgrade work and additions on a condominium project in Michigan. The unreported income came from checks that were made out to him personally and not run through his business entity. Under the United States Sentencing Guidelines, he was subject to a minimum term of 12 months in prison. The district court instead granted a downward departure and sentenced him to three years of probation, with no jail time. I respectfully dissent because I find nothing extraordinary concerning Holz's circumstances that justify taking this case out of the "heartland" of cases controlled by the Sentencing Guidelines.

The problem I have with the majority opinion is not in its statement of the governing legal principles, but rather with what I believe is its failure to properly apply those principles to the facts before us. One key principle recognized by the majority is set forth in the following Official Comment to the Sentencing Guidelines: "Departures based on a combination of not ordinarily relevant circumstances that are present to a substantial degree should occur extremely rarely and only in exceptional cases." U.S. Sentencing Guidelines § 5K2.0, cmt. n.3(C). Another key principle acknowledged by the majority is that a departure is warranted only where the combination of factors removes the case from the "heartland" of factors covered by the Sentencing Guidelines. (Maj. Op. p. 19, citing *United States v. Sabino*, 274 F.3d 1053, 1078 (6th Cir. 2001)).

In applying the above principles to the case at hand, the majority opinion engages in a lengthy explanation of Holz's family and business problems as found by the district court. Although I do not dispute the details recited, they basically boil down to the government's characterization

23

that Holz's "wife is very distressed that he will go to prison, and incarceration will disrupt his business affairs." I have no doubt that this distress and disruption are legitimate concerns; my problem is in trying to justify the proposition that these concerns are either "exceptional" or "occur extremely rarely."

After reviewing all of the details that purportedly justify a downward departure from the Sentencing Guidelines in the present case, the fact remains that each detail falls into one of two categories: either family responsibilities or a vocational skill. Yet the Sentencing Guidelines specifically state that neither category is "ordinarily relevant" in determining whether a departure is warranted. U.S. Sentencing Guidelines §§ 5H1.6 (family responsibilities); 5H1.2 (vocational skill). In fact, a "departure for 'family responsibilities' is a discouraged factor . . . and therefore is only proper in 'exceptional cases.'" *United States v. Reed*, 264 F.3d 640, 653 (6th Cir. 1991).

I find nothing exceptional about Holz's family or business situation, especially when heeding the United States Supreme Court's admonition that such status is "determined in large part by comparison with the facts of other Guidelines cases." *Koon v. United States*, 518 U.S. 81, 98 (1996). In surveying the few cases where a departure has been granted for family or business reasons, I note that all of them involve situations far more compelling than that presented by Holz. *See, e.g., United States v. Leon*, 341 F.3d 928, 933 (9th Cir. 2003) (granting a departure where the defendant's wife suffered from kidney cancer and long-standing depression, and the defendant was found to be "an irreplaceable caretaker"); *United States v. Milikowsky*, 65 F.3d 4, 8-9 (2d Cir. 1995) (granting a departure where the defendant's incarceration would cause the immediate bankruptcy of two steel-related businesses with an indebtedness of $20 million and the loss of 150-200 jobs).

24

The Holz situation pales in comparison to these cases. There is nothing in the record to establish that Holz's wife suffered from any depression that preexisted the investigation of his tax fraud, or that the couple's two adult children who live nearby could not adequately look after their mother's needs during Holz's incarceration. Similarly, the scope of Holz's business operations is minuscule in comparison to a case like *Milikowsky*. This court, in fact, has held that there is "nothing special" about the negative effects of incarcerating a white-collar business owner. *United States v. Rutana*, 932 F.2d 1155, 1158 (6th Cir. 1991) ("[E]ven assuming that Rutana's imprisonment would lead to the failure of his business and the loss of his employees' jobs, this fact does not distinguish Rutana from other similar offenders.").

My primary concern with the result reached by the majority in this case is that it opens a gaping hole in the application of the Sentencing Guidelines that by law is to be reserved for truly exceptional situations. In effect, it sanctions a "get out of jail free" card for tax cheats who own a small business and have a nervous spouse. I therefore respectfully dissent.