NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a1085n.06

No. 11-3670

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Oct 17, 2012*

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | NORTHERN DISTRICT OF OHIO |
| RONALD A. ROMANINI, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

Before:  GIBBONS and SUTTON, Circuit Judges; DUGGAN,[*] District Judge.

**JULIA SMITH GIBBONS, CIRCUIT JUDGE.**  Ronald Romanini pled guilty to one count

of bribery concerning programs receiving federal funds, in violation of 18 U.S.C. § 666(a)(2).  The

district court sentenced Romanini to forty-one months' imprisonment and three years of supervised

release and required him to pay a $100,000 fine, $30,000 in restitution, and a special assessment of

$100.  On appeal, Romanini argues that the district court erred by (1) considering Romanini's

personal wealth and the government's charging decisions in determining his sentence, (2) declining

to adjust Romanini's sentence downward because he accepted responsibility for his offense, and (3)

adjusting Romanini's sentence downward by only two levels, instead of the four levels agreed to by

---

[*]The Honorable Patrick J. Duggan, United States District Judge for the Eastern District of
Michigan, sitting by designation.

1

the government, because he rendered substantial assistance to authorities. For the reasons that follow, we vacate Romanini's sentence and remand this case to the district court for resentencing.

I.

From approximately 1996 to 2008, Romanini paid a series of bribes to Cuyahoga County Auditor Frank Russo, an elected official, in order to secure jobs and raises for Romanini's family and friends. This case arises from a bribe that Romanini paid in 2007 to secure a raise for a relative.

Romanini is the founder of Willoughby Supply Company, which he owned until he sold the business to his sons in 2005. In April 2007, Russo asked Romanini to inspect the roof of his home. Romanini informed Russo that his roof needed to be replaced, and Romanini assisted Russo by coordinating the work and paying for the materials and labor, valued at approximately $25,000. Russo told Romanini that he would pay for the project, but he never gave Romanini any money. Romanini sold scrap copper from Russo's roof for $10,000 and applied its value toward his costs, but he made no attempt to collect payment from Russo after submitting the initial invoices to him in summer 2007.

In April 2007, Russo, who had authority over personnel decisions within the Auditor's Office, gave a raise to one of his employees, Romanini's relative. He gave the employee another raise in February 2008. In March 2008, Romanini asked Russo if he had "take[n] care" of his relative, and Russo assured him that he had, clarifying the amount of the raise by saying that "we have him twelve fifty now, and twelve fifty in a few months we're gonna give him . . . ."

Government agents, who were investigating Russo for corruption, interviewed Romanini in January and August 2009. During the interviews, they asked Romanini if he had any relatives who worked for Russo, other than the relative who received the raise in 2007, and whether Romanini had engaged in any financial transactions with Russo, other than replacing his roof and paying for a trip that the Russo family took years earlier. Romanini falsely answered both questions in the negative.

On September 23, 2010, Romanini was charged in a one-count information with bribery concerning programs receiving federal funds, in violation of 18 U.S.C. § 666(a)(2). On October 20, 2010, Romanini pled guilty pursuant to a plea agreement.

In December 2010, representatives of the U.S. Attorney's Office contacted Romanini's lawyer and told him that they had received information about dealings between Russo and Romanini that Romanini had not disclosed previously. Romanini admitted during a February 2011 proffer interview that from approximately 1996 to 2008, he asked Russo to provide employment for eight of Romanini's friends and relatives. Russo's office hired six of them, and two were referred to the Maple Heights City Schools, where they were hired. In exchange for each hire, Romanini paid Russo between $1,000 and $3,000 in cash, giving Russo between $10,000 and $30,000 total. During the proffer interview, Romanini also provided other new information to the investigating agents.

In March 2011, Romanini entered into a new plea agreement with the government for his 2007 bribe. He was not charged with additional misconduct, but the Superseding Plea Agreement took into consideration the new information about Romanini's dealings with Russo and the lies that he told investigators. Under the Superseding Plea Agreement, the parties agreed that Romanini's base

offense level under the United States Sentencing Guidelines was twelve. The parties also agreed that the offense level would increase as follows: two levels because Romanini engaged in multiple bribes, four levels because of the value of the bribes, four levels because the bribes involved an elected public official, and two levels because Romanini obstructed justice, bringing the adjusted offense level to twenty-four. The U.S. Attorney's Office agreed to recommend a three-level reduction pursuant to U.S.S.G. §§ 3E1.1(a) and (b) because Romanini accepted responsibility for his criminal conduct. It also agreed to make a motion before the district court to depart downward up to four levels under U.S.S.G. § 5K1.1 because Romanini provided substantial assistance to investigators.

On May 25, 2011, the district court held a sentencing hearing. The district court calculated Romanini's base offense level to be twelve, and, after factoring in upward adjustments, the district court concluded that Romanini's adjusted offense level was twenty-four. The district court declined to apply a three-level adjustment for acceptance of responsibility and granted only a two-level reduction for substantial assistance. The district court calculated Romanini's Guidelines range to be forty-one to fifty-one months' imprisonment. The district court sentenced Romanini to forty-one months' imprisonment and three years of supervised release and required him to pay a $100,000 fine, $30,000 in restitution, and a special assessment of $100.

When the district court asked for objections pursuant to *United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004), Romanini argued that his sentence was procedurally unreasonable due to the district court's refusal to grant the adjustment for acceptance of responsibility and the full four-level adjustment for substantial assistance. Romanini also challenged the $100,000 fine as excessive and

contested the substantive reasonableness of his sentence, arguing that it exceeded what is necessary under the § 3553(a) factors.

## II.

## A.

Romanini argues that the sentence he received is unreasonable because it was based on impermissible sentencing factors. First, he contends that the district court impermissibly considered his socioeconomic status in crafting his sentence. Second, he contends that the district court impermissibly considered conduct that the government agreed not to charge and that the district court punished Romanini based on its view that the government had given him preferential treatment.

During the sentencing hearing, the district court made several comments about Romanini's personal wealth and the government's decision not to pursue additional charges against him. The district court compared Romanini's case with the cases of others who were charged in connection with the Cuyahoga County corruption investigation:

> I've sentenced ten other defendants. Most of them much lower level involvement than this defendant, at least in my view, small contractors, individuals not of great wealth, struggling to make a living, playing the game, so to speak, the corrupt game in Cuyahoga County just trying to make a living, just trying to get by.
> This defendant has great wealth. According to the PSI, he has $13 million of net worth. If there is individuals that need jobs, need help, he has the ability to do that.

The district court continued:

> And I must tell you, with all due respect, I have great doubt about the fairness of this agreement compared and contrasted with the way, at least the ten I've seen, and some others that I've seen, the way this case has been pursued, the consequence you're asking for a defendant in this particular case compared to others.

The government explained its decision not to charge Romanini for making false statements to investigators and for additional bribes, and the district court responded:

> [T]here has been others that you've charged, others that have been pursued for making false statements to agents, and I don't, quite frankly, understand still—I won't repeat myself—this appears to me, I don't know how or why, but the benefit to this defendant compared and contrasted with others, again, far lower, with far less resources.
>     Socioeconomic background is not part of the guidelines, but one must wonder when individuals with great wealth, great community support, how it is that their plea agreement and their consequence for this kind of conduct is what I have before me.
>     . . . .
>     But as I look at all these other defendants, I've got a chart here, all these other defendants, their plea agreements, the government's recommendations and their consequences, these lower-level defendants compared and contrasted with this one, I can't help but wonder. I can't help but wonder, having sentenced all these other defendants, how and why they ended up with those consequences, with those lower level defendants with no money or limited resources, struggling to get by, compared and contrasted with what I see here. It is very troubling to me.

The district court considered the sentencing factors in 18 U.S.C. § 3553(a), noting that "[i]t is somewhat relevant" that Romanini "has been extremely successful" and "has total assets of over $13 million, nearly 13 and a quarter million dollars in real estate and other holdings." The district court remarked that Romanini's conduct was "more serious in some respects than that of these other low-level contractors who were facing guideline sentences." It also observed that "[t]he public, of course, at least in my view, is extremely skeptical, skeptical from time to time of the courts, and wonder whether or not individuals with either great wealth, power, or privilege receive greater benefits than that of others."

Romanini argued that his misconduct was motivated by his desire to help others, but the district court rejected this argument:

With all due respect, Mr. Romanini, you have achieved great success. You have your own company. You have great wealth. If there is individuals who need help, need jobs, certainly Mr. Romanini had the ability through his own, his own wealth and through other business connections to assist others lawfully in obtaining employment. Bribes, kickbacks, speaks volumes. And that's why the sentence is deserved in this particular matter, and the other reasons as I've already stated.

In *United States v. Booker*, 543 U.S. 220, 245 (2005), the Supreme Court held that the United States Sentencing Guidelines are advisory. Post-*Booker*, this court reviews a district court's sentencing determination "'under a deferential abuse-of-discretion standard,' for reasonableness." *United States v. Bolds*, 511 F.3d 568, 578 (6th Cir. 2007) (quoting *Gall v. United States*, 552 U.S. 38, 41 (2007)). A sentence that falls within the Guidelines range triggers a rebuttable presumption of reasonableness. *United States v. Cousins*, 469 F.3d 572, 576 (6th Cir. 2006), *abrogated on other grounds by Irizarry v. United States*, 553 U.S. 708, 715-16 (2008). However, this court has recognized that:

> [T]he presumption [of reasonableness] does not excuse a sentencing court's failure to adhere to the procedural requirements of a reasonable sentence and indeed applies only to sentences that generally have satisfied these numerous requirements. In the Sixth Circuit, as in many other circuits, we distinguish between the substantive and procedural components of reasonableness review, and nothing about the presumption permits a sentencing court to ignore the procedural requirements of a reasonable sentence.

*Id.* (quoting *United States v. Buchanan*, 449 F.3d 731, 738 (6th Cir. 2006) (Sutton, J., concurring) (internal quotation marks omitted)).

Romanini contends that the district court's consideration of impermissible factors at sentencing renders his sentence substantively unreasonable. This court has not clearly distinguished the procedural and substantive components of the reasonableness inquiry, sometimes finding that the

same factors are relevant to each component. *United States v. Herrera-Zuniga*, 571 F.3d 568, 579 (6th Cir. 2009); *United States v. Bailey*, 488 F.3d 363, 368 n.1 (6th Cir. 2007). In *United States v. Webb*, 403 F.3d 373, 385 (6th Cir. 2005), we concluded that a sentence may be unreasonable if it is based on impermissible factors, but *Webb* did not distinguish between procedural and substantive reasonableness. In *United States v. Ferguson*, 456 F.3d 660, 664 (6th Cir. 2006), *abrogated on other grounds by Kimbrough v. United States*, 552 U.S. 85, 110 (2007), we found that the consideration of impermissible factors is relevant to a sentence's substantive reasonableness. This court has cited *Webb* and *Ferguson* for the proposition that a district court's consideration of impermissible factors at sentencing renders a sentence substantively unreasonable. *See, e.g.*, *United States v. Tolbert*, 668 F.3d 798, 803 (6th Cir. 2012) (citing *Webb*); *United States v. Tate*, 516 F.3d 459, 469 (6th Cir. 2008) (citing *Ferguson*). In *United States v. Malone*, 503 F.3d 481, 484 (6th Cir. 2007), however, we recognized that, although many cases classify the consideration of an impermissible factor at sentencing as an aspect of substantive reasonableness, this concern is really more relevant to procedural reasonableness. After all, "the challenge is more to the *process* by which the district court arrived at the given sentence than to the substantive aspect of the sentence (i.e., the relationship between the length of the sentence and the strength of the reasoning under § 3553(a))." *Id.* We review Romanini's sentence for procedural reasonableness.

The government argues that this court should review Romanini's claim for plain error because Romanini did not properly preserve a procedural reasonableness challenge by objecting on this ground when the district court asked for objections pursuant to *United States v. Bostic*, 371 F.3d 865

8

(6th Cir. 2004). "Substantive-reasonableness claims do not need to be raised before the district court to be preserved for appeal." *United States v. Freeman*, 640 F.3d 180, 185-86 (6th Cir. 2011) (citing *United States v. Penson*, 526 F.3d 331, 337 (6th Cir. 2008)). However,

> 'if a sentencing judge asks . . . whether there are any objections not previously raised, in compliance with the procedural rule set forth in *United States v. Bostic*, 371 F.3d 865 (6th Cir.2004)[,] and if the relevant party does not object, then plain-error review applies on appeal' to those procedural-reasonableness arguments that were not preserved in the district court.

*Id.* at 186 (citing *Penson*, 526 F.3d at 337 (alterations and internal quotation marks omitted)).

Nonetheless, "neither the defense nor the government, in response to the *Bostic* question, has any obligation to raise objections already made." *United States v. Vonner*, 516 F.3d 382, 390 (6th Cir. 2008) (*en banc*). The point of the *Bostic* question "is simply to give counsel one last chance to preserve objections for appeal that counsel has not yet seen fit to raise or has not yet had an opportunity to raise." *Id.* During the sentencing hearing, both Romanini's counsel and the government disputed the district court's assertion that the Superseding Plea Agreement was unduly favorable to Romanini based on his wealth, and they defended the government's decision not to charge Romanini with additional offenses. Romanini was not required to object to the district court's impermissible consideration of his socioeconomic status or the government's charging decisions in response to the *Bostic* question because he had already made his disagreement known.

First, Romanini argues that the district court impermissibly considered his socioeconomic status in crafting his sentence. *Booker* established that the Guidelines are advisory, but "[d]istrict courts are still obliged to consider the [United States Sentencing] Commission's policy statements

9

after *Booker*." *Ferguson*, 456 F.3d at 666. Under U.S.S.G. § 5H1.10, socioeconomic status is "not relevant in the determination of a sentence." This policy statement "precludes a district court from determining that a defendant's prominence, or lack thereof, weighs in favor of, or against, a departure." *Ferguson*, 456 F.3d at 665 (quoting *United States v. Holz*, 118 F. App'x 928, 935 (6th Cir. 2004)). In *United States v. Ferguson*, we held that the district court did not impermissibly consider the defendant's socioeconomic status when it remarked during sentencing that imposing a lenient sentence based on the defendant's education and professional success would not promote respect for the law, a factor that the court was required to consider under § 3553(a)(2)(A). *Ferguson*, 456 F.3d at 666. The district court said that a lenient sentence would "simply tend to set in concrete the public perception that the higher you are, the less you have to fear from the law; and that if a person can afford it, the system, such as it is, can be beaten." *Id.* at 664. This comment, taken in context, did not demonstrate that the defendant's "prominence, or lack thereof, weigh[ed] in favor" of or against a longer term of imprisonment. *Id.* at 666 (quoting *Holz*, 118 F. App'x at 935).

While the district court in *Ferguson* made an isolated statement about the defendant's status during its discussion of a § 3553(a) factor, the district court in this case repeatedly mentioned Romanini's wealth throughout the sentencing hearing. The district court acknowledged that "[s]ocioeconomic background is not part of the guidelines," but it nonetheless appeared to consider Romanini's status in determining his sentence. Some of the district court's comments contrasting Romanini's plea agreement with the plea agreements of less wealthy defendants who were charged as a result of the corruption investigation may have reflected a desire to avoid unwarranted sentencing

disparities, consistent with § 3553(a)(6). But the district court's comments were not limited to its discussion of the § 3553(a) factors. The district court implied that the bribes that Romanini paid to Russo to secure jobs for his friends and family were more blameworthy because Romanini, a wealthy businessman, could simply have employed those individuals himself. The district court commented:

> With all due respect, Mr. Romanini, you have achieved great success. You have your own company. You have great wealth. If there is individuals who need help, need jobs, certainly Mr. Romanini had the ability through his own, his own wealth and through other business connections to assist others lawfully in obtaining employment. Bribes, kickbacks, speaks volumes. And that's why the sentence is deserved in this particular matter, and the other reasons as I've already stated.

These remarks demonstrate that the district court impermissibly considered Romanini's socioeconomic status in determining his sentence.

Romanini also argues that the district court impermissibly considered Romanini's wealth when it imposed a $100,000 fine. Pursuant to 18 U.S.C. § 3572(a)(1),when a district court determines the amount of a fine, it may consider "the defendant's income, earning capacity, and financial resources." However, this court has vacated sentences as procedurally unreasonable where a district court fails to reference the defendant's applicable Guidelines range or state specific reasons for imposing an upward departure or variance. *United States v. Blackie*, 548 F.3d 395, 400-01 (6th Cir. 2008); *see also Cousins*, 469 F.3d at 578 (finding that the district court's sentence was procedurally unreasonable where the court failed to provide its reasoning for a variance).

The district court calculated Romanini's offense level to be twenty four and then granted a two-level reduction because Romanini provided authorities with substantial assistance. The Guidelines provide that a defendant with an offense level of twenty-two may be fined from $7,500

11

to $75,000. U.S.S.G. § 5E1.2. At the sentencing hearing, the district court commented on Romanini's "great success" before imposing the $100,000 fine, noting only that there "certainly should not be an issue" as to whether Romanini could pay the fine immediately. The district court did not explain its reasoning for departing from the Guidelines range, and its comments indicate that the court was not even aware that the fine was a variance. In response to Romanini's objection, the court responded, "The fine, if it exceeds that of the advisory guidelines, in my view it is a—I will treat it as a variance if need be. It is warranted based on the facts and circumstances of this case. The defendant has the ability to pay the fine." Because the district court failed to discuss Romanini's Guidelines range or explain its specific reasons for imposing a higher fine, the court's determination is procedurally unreasonable.

Finally, Romanini argues that the district court impermissibly considered Romanini's false statements to investigators and additional bribes when determining his sentence. In the parties' Superseding Plea Agreement, which was accepted by the court, the government agreed not to pursue additional charges against Romanini. Romanini argues that the district court, which expressed its displeasure with the government's charging decision, "double-counted" Romanini's uncharged conduct by factoring it into the Guidelines calculation and then using it as a basis to reject Romanini's arguments for offense level reductions.

Pursuant to U.S.S.G. § 6B1.2(a):

[A] plea agreement that includes the dismissal of a charge or a plea agreement not to pursue a potential charge shall not preclude the conduct underlying such charge from being considered under the provisions of § 1B1.3 (Relevant Conduct) in connection with the count(s) of which the defendant is convicted.

Thus, uncharged conduct may factor into a court's determination of the applicable Guidelines range. "[I]mpermissible 'double counting' occurs when precisely the same aspect of a defendant's conduct factors into his sentence in two separate ways." *United States v. Farrow*, 198 F.3d 179, 193 (6th Cir. 1999) (citing *United States v. Perkins*, 89 F.3d 303, 310 (6th Cir. 1996)). For example, "where 'a single aspect of the defendant's conduct both determines his offense level and triggers an enhancement,' double counting may occur." *United States v. Eversole*, 487 F.3d 1024, 1030 (6th Cir. 2007) (quoting *Farrow*, 198 F.3d at 193).

At the sentencing hearing, the district court challenged the government's decision not to charge Romanini with additional wrongdoing. It also refused to grant Romanini a downward departure for acceptance of responsibility and gave Romanini a two-level reduction, instead of the requested four levels, for rendering substantial assistance to authorities. Romanini speculates that the district court's refusal to grant the downward adjustments was based on its belief that Romanini should have been charged with additional wrongdoing. First, the district court's comments about the government's charging decision were directed at the government, not Romanini, indicating that the district court merely sought to rebuke the government, not punish Romanini. Second, Romanini cites no authority for the proposition that impermissible double counting occurs when a district court considers the defendant's conduct in determining his offense level and also when it refuses to grant a downward adjustment. For these reasons, the district court did not impermissibly double count Romanini's uncharged conduct. Romanini's sentence is not procedurally unreasonable on this basis.

In sum, while the district court did not impermissibly consider Romanini's uncharged conduct, the district court erred when it impermissibly considered Romanini's socioeconomic status in determining his sentence and when it failed to explain its reasons for imposing a fine higher than recommended by the Guidelines. These errors render Romanini's sentence procedurally unreasonable. For this reason, we vacate Romanini's sentence and remand to district court for resentencing.

B.

Romanini next argues that the district court erred in declining to adjust Romanini's sentence downward because he accepted responsibility for his offense, pursuant to U.S.S.G. § 3E1.1. The government contends that Romanini was not entitled to a reduction in his offense level for acceptance of responsibility because he obstructed justice.

U.S.S.G. § 3E1.1 provides for an offense level reduction of up to three points when a defendant accepts responsibility for his actions:

> (a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.
> (b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by 1 additional level.

Conduct that results in an enhancement under § 3C1.1 for obstruction of justice "ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." U.S.S.G. § 3E.1.1 cmt.4.

However, there may "be extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply." *Id.*

"[W]hether undisputed facts constitute an 'extraordinary' case that warrants an adjustment for acceptance of responsibility despite charges of obstruction of justice under § 3E1.1" is a question of law that we review *de novo*. *United States v. Harper*, 246 F.3d 520, 525 (6th Cir. 2001), *overruled on other grounds by United States v. Leachman*, 309 F.3d 377, 384 n.7 (6th Cir. 2002).

"Appropriate considerations for determining whether a reduction is warranted include the defendant's truthful admission of the offense conduct, the defendant's voluntary assistance to authorities in resolving the offense, and the timeliness of the defendant's conduct in affirmatively accepting responsibility for his actions." *United States v. Gregory*, 315 F.3d 637, 640 (6th Cir. 2003). "The defendant has the burden of proving the extraordinary nature of his or her case where obstruction of justice has occurred." *United States v. Jeross*, 521 F.3d 562, 582 (6th Cir. 2008).

Romanini has not demonstrated that the "extraordinary nature" of his case entitles him to an offense level reduction. First, Romanini did not timely accept responsibility for all of his criminal conduct. Romanini compares his case to *United States v. Gregory*, in which we reversed the district court's ruling that the defendant was not entitled to an offense level reduction for acceptance of responsibility. 315 F.3d at 641. In *Gregory*, the defendant admitted to his criminal conduct, attempting to smuggle contraband into prison and agreed to cooperate in an interview with investigators the week after the crime took place. *Id.* at 640. Gregory subsequently sent a letter to his sister, who was involved in the crime, instructing her not to talk with authorities, but the next day,

15

he "undid" his obstructionist conduct by calling his sister and urging her to cooperate. *Id.* at 639-40. We determined that Gregory's case was extraordinary, observing that Gregory's obstructive conduct predated his indictment, he never denied his own responsibility and guilt, and he cooperated with officials long before he was charged with an offense. *Id.* at 641. Like the defendant in *Gregory*, Romanini lied to investigators before he was charged by information with bribery, but Romanini's efforts to "undo" his obstructive conduct took place much later. Romanini did not disclose the full extent of his dealings with Russo until February 2011, a year and a half after his August 2009 interview, the second interview in which he lied to authorities.

Moreover, we have recognized that a defendant's case is not extraordinary when he continues to obstruct justice after purporting to cooperate with government officials. *See United States v. Adams*, 321 F. App'x 449, 460-61 (6th Cir. 2009). We concluded that the defendant in *Adams* was not entitled to a downward adjustment for acceptance of responsibility, in part, because he "continually lied to the government long after he purportedly began 'cooperating' with the investigation." *Id.* at 461. Romanini entered into a plea agreement in October 2010, in which he agreed to "cooperate fully" with the government. While Romanini did not affirmatively obstruct the investigation by lying to authorities after he pled guilty, he failed to disclose the full extent of his dealings with Russo, even after he promised to provide officials with complete and truthful information.

Finally, Romanini's disclosure cannot be considered truly voluntary. Romanini's case is analogous to *United States v. Jeross*, 521 F.3d 562, 581-82 (6th Cir. 2008), in which we held that the

defendant was not entitled to a reduction for acceptance of responsibility after he admitted to threatening a witness. We observed that, not only did Jeross's obstructive conduct take place at or after his indictment, but Jeross did not begin to cooperate with the government until after the total offense level recommended in his pre-sentence report was revised upward as a result of his threats. *Id.* at 582. Similarly, Romanini admitted that he gave Russo additional bribes after representatives of the U.S. Attorney's Office contacted Romanini's lawyer and told him that they had information about his dealings with Russo. Romanini told the truth only after he was caught in a lie.

In sum, because Romanini did not timely accept responsibility for his actions, continued to conceal the extent of his criminal conduct after entering into a plea agreement that required him to do so, and only revealed additional bribes after they were discovered by investigators, Romanini's case is not an "extraordinary" one entitling him to a downward departure. The district court did not err when it declined to adjust Romanini's sentence downward because he accepted responsibility for his offense.

C.

Romanini contends that the district court erred when it adjusted Romanini's sentence downward by only two levels, instead of the four levels agreed to by the government, because he rendered substantial assistance to authorities under U.S.S.G. § 5K1.1. "When 'the district court grants a downward departure for substantial assistance and the defendant's claim on appeal goes only to the extent of the departure, this Court has no jurisdiction over the appeal.'" *United States v. Curry*, 536 F.3d 571, 573 (6th Cir. 2008) (quoting *United States v. Jones*, 417 F.3d 547, 551 (6th Cir. 2005)

(citations omitted)). For this reason, we cannot consider whether the district court should have granted Romanini a four-level downward departure instead of the two-level departure that he received for substantially assisting authorities.

D.

Finally, Romanini asks us to exercise our authority under 28 U.S.C. § 2106 to remand this case to a different district judge.

"[R]eassignment is an 'extraordinary power and should rarely be invoked . . . . [R]eassignments should be made infrequently and with the greatest reluctance.'" *Sagan v. United States*, 342 F.3d 493, 501 (6th Cir. 2003) (quoting *Armco, Inc. v. United Steelworkers of America, AFL-CIO, Local 169*, 280 F.3d 669, 683 (6th Cir. 2002)).

To determine whether reassignment is necessary, we consider the factors outlined in *Bercheny v. Johnson*:

> (T)he principal factors considered . . . in determining whether further proceedings should be conducted before a different judge are 1) whether the original judge would reasonably be expected . . . to have substantial difficulty in putting out of his mind previously-expressed views or findings . . . 2) whether reassignment is advisable to preserve the appearance of justice, and 3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

633 F.2d 473, 476-77 (6th Cir. 1980) (quoting *United States v. Robin*, 553 F.2d 8, 10 (2d Cir. 1977)).

Although the district court erred in considering Romanini's socioeconomic status during his sentencing, the extraordinary measure of reassignment is not necessary to ensure that Romanini receives a fair sentence on remand. Where "we are satisfied that [the judge] will re-visit the matter with a completely open mind at the de novo resentencing," reassignment is not required. *United*

*States v. Garcia-Robles*, 640 F.3d 159, 168 (6th Cir. 2011) (quoting *United States v. Faulks*, 201 F.3d 208, 209 (3d Cir. 2000)).

IV.

For the foregoing reasons, we vacate Romanini's sentence and remand this case to the district court for resentencing in accord with this opinion.