NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0317n.06

No. 20-3830

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| WILLIAM ROBERT COLLINS, | ) | OHIO |
| | ) | |
| Defendant-Appellant. | ) | |

**FILED**
Jul 06, 2021
DEBORAH S. HUNT, Clerk

BEFORE: COLE, ROGERS, and MURPHY, Circuit Judges.

MURPHY, Circuit Judge. William Collins pleaded guilty to, among other things, creating illegal images of his sexual abuse of two young toddlers. When sentencing Collins to 35 years' imprisonment, the district court suggested that if a defendant had inflicted this type of abuse on a relative, the court "would want just five minutes alone in a closed room with a baseball bat." Tr., R.43, PageID 673–74. It also noted that "95 percent" of defendants have a "background" like Collins's, which included severe childhood sexual abuse. *Id.*, PageID 669. When read in isolation (as Collins asks us to do), these statements might raise a judicial eyebrow. Yet when read in their proper context (as we must), the statements offer no basis to reverse his sentence. The court was only trying to sympathize with a victim's mother when it made the baseball-bat comment; the comment did not, as Collins argues, affect his sentence. And the court's 95% figure was only trying to convey that many defendants have troubled backgrounds; it was not, as Collins also

argues, making a finding of "fact" about the number of defendants who have suffered from sexual abuse. Because Collins's sentence was otherwise reasonable, we affirm.

I

Users of the mobile app "LiveMe" can create groups in order to message and exchange videos with individuals who share the same interests. Some of these users create LiveMe groups to distribute child pornography. In February 2019, an undercover FBI agent was monitoring the app for illegal content. The agent identified the user "biggdikkdaddy" as a member of several LiveMe groups that had been disseminating thousands of child-pornography images. This unknown user had posted many of these images himself, including some showing that he had a unique tattoo on his hand. By comparing the tattoo in the images to those in Facebook photos, the FBI came to suspect that the unknown LiveMe user was William Collins, a tattoo artist living in Toledo, Ohio.

FBI agents searched Collins's home and seized two of his phones. During a contemporaneous interview, Collins confirmed that he was the sought-after LiveMe user and confessed that he had viewed and distributed child pornography. His two phones contained 7,637 images and 2,707 videos of illegal content.

The phones also revealed that Collins's criminal activities extended well beyond viewing child pornography. He had created and stored images of his sexual abuse of two children: his former tattoo customer's three-year-old daughter and his girlfriend's two-year-old daughter. The former customer told investigators that Collins had previously offered her free tattoos if he could sexually abuse her daughter. Although she allegedly declined his offer, she admitted that she once found Collins and her daughter naked and asleep in his bed.

Collins's girlfriend moved out of his home a few months after the search. During the move, she discovered a third phone behind a dresser. She gave it to the FBI. This phone stored another 3,600 images and 207 videos of child pornography. It also contained more images of Collins's sexual abuse of his girlfriend's daughter.

The government charged Collins with two counts of producing child pornography in violation of 18 U.S.C. § 2251(a) and one count of distributing child pornography in violation of 18 U.S.C. § 2252(a)(2). Collins pleaded guilty to all three counts without a plea agreement.

Before sentencing, a probation officer's presentence report calculated Collins's recommended sentence under the guidelines alone (without considering any statutory sentencing ranges) as life imprisonment. Yet the statutory maximum sentence for Collins's first two counts was only 30 years and the statutory maximum sentence for his third count was only 20 years. 18 U.S.C. §§ 2251(e), 2252(b)(1). The presentence report thus identified Collins's guidelines sentence as the total of the three statutory maximums: 960 months. Collins asked the district court to vary substantially downward from this sentence by imposing a 210-month term of imprisonment. He supported his request with a psychologist's report describing his difficult childhood, including his father's severe sexual abuse.

At sentencing, the district court stated that the guidelines range was 360 to 960 months' imprisonment. It opted for a total sentence of 420 months (or 35 years). It picked this amount by adding up the statutory *minimums* for each of the three counts (15 years on the first two counts and 5 years on the third) and ordering the sentences to run consecutively. *See* 18 U.S.C. §§ 2251(e), 2252(b)(1). When balancing the sentencing factors in 18 U.S.C. § 3553(a), the court recognized Collins's difficult upbringing. Yet it weighed his tragic childhood against the high culpability

inherent in sexually abusing two toddlers and seeking out child pornography from the dark corners of the internet. It also found the sentence necessary to protect the public.

II

Collins raises three challenges to his 420-month sentence. He claims that the district court considered an impermissible factor, made a clearly erroneous finding of fact, and chose an excessive sentence when measured against the § 3553(a) factors. We review the sentence for both procedural and substantive reasonableness. *See United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019). The parties have debated whether Collins's first two challenges qualify as "procedural" or "substantive" claims—an issue on which our cases have been inconsistent. *See United States v. Hunter*, 842 F. App'x 999, 1004 n.7 (6th Cir. 2021); *United States v. Frost*, 770 F. App'x 744, 744–45 (6th Cir. 2019). This definitional debate typically matters because abuse-of-discretion review applies to a substantive challenge whether or not a defendant has preserved it, whereas plain-error review applies to an unpreserved procedural challenge. *Compare Holguin-Hernandez v. United States*, 140 S. Ct. 762, 766–67 (2020), *with United States v. Hatcher*, 947 F.3d 383, 389 (6th Cir. 2020). But the debate does not matter for this case. Even assuming Collins preserved all three of his claims, the claims still fail.

1. *Impermissible Factor*. Federal law identifies the factors that a district court should consider when determining the length of a sentence, including things like the need to "provide just punishment," "protect the public," and ensure "adequate deterrence" of the crime. *See* 18 U.S.C. § 3553(a)(2). The law, by contrast, places other factors (such as the need for rehabilitation) off limits to a district court when choosing a sentence's length. *See Frost*, 770 F. App'x at 745.

Collins argues that the district court based its sentence on some of these off-limits grounds. At sentencing, the mother of one of Collins's toddler victims spoke in support of the maximum

4

possible sentence, asking the district court "to give this monster every minute that you can in prison." Tr., R.43, PageID 654. Although the court denied this request to sentence Collins to the highest possible amount (960 months), it told the victim's mother that her plea for "retribution" was "understandable." *Id.*, PageID 673. The court then discussed what it might want to do if someone had inflicted similar abuse on a family member:

> I cannot imagine how I would feel if somebody had done that to one of our four daughters, to one of our eight granddaughters or two grandsons. I know what I would want. I would want just five minutes alone in a closed room with a baseball bat. That's what I would want. And that's a human compassion, that's totally understandable. It is not irrational, it is rational[].

*Id.*, PageID 673–74. Collins argues that this statement invoked impermissible factors because a court should not increase a sentence based on how it would feel if a relative were the victim or based on the belief that the defendant's crime warrants a violent response.

Yet a district court commits error only if it *relies on* an impermissible factor to determine the length of the defendant's sentence—meaning that the impermissible factor must have affected the sentence. *See United States v. Albaadani*, 863 F.3d 496, 504 (6th Cir. 2017); *United States v. Cabrera*, 811 F.3d 801, 809 (6th Cir. 2016); *United States v. Malone*, 503 F.3d 481, 485–86 (6th Cir. 2007). If the record shows that the challenged statements did not change the sentence's length, those statements provide no basis for overturning the sentence. *See Albaadani*, 863 F.3d at 504–05; *United States v. Musgrave*, 647 F. App'x 529, 534–36 (6th Cir. 2016).

Here, Collins takes the district court's statements out of their proper context when he argues that they show that impermissible considerations increased his sentence. The court made these statements not when describing the reasons for the 420-month term. Rather, it made them when addressing the victim's mother and opining that her request for significant retribution (in the form of a 960-month sentence) was "understandable" and "rational." Nothing in the sentencing

5

transcript suggests that the court's expression of empathy toward the victim's mother produced even a single additional day in prison. *See Albaadani*, 863 F.3d at 504. Indeed, the court ultimately denied the mother's plea by sentencing Collins to well under half of her requested time.

In the cases on which Collins relies, by contrast, the record left no doubt that the district court had relied on an impermissible factor to increase or decrease the sentence. Consider *Malone*. There, the district court gave the defendant a downward variance because the defendant's drug-related sentence would have been much lower if he had been convicted in state court. 503 F.3d at 483. We found that the court wrongly considered the defendant's hypothetical state-court sentence, which made it obvious that the court had reduced the sentence based on an impermissible factor. *Id.* at 484–86. Or consider *United States v. Romanini*, 502 F. App'x 503 (6th Cir. 2012). We reversed in that case because the district court had wrongly relied on the defendant's socioeconomic status. *Id.* at 507–09. There, too, the record made it obvious that the defendant's socioeconomic status had produced an uptick in his sentence; the court noted that the sentence was "deserved" because of the defendant's "great success" and "great wealth." *Id.* at 509; *see also United States v. Van*, 541 F. App'x 592, 597–98 (6th Cir. 2013). Unlike the statements in these other cases, the district court's "isolated statement[s]" to the victim's mother here in no way affected Collins's sentence. *Musgrave*, 647 F. App'x at 536 (citation omitted).

2. *Clearly Erroneous Fact*. Collins next argues that the district court justified its 420-month sentence with a mistaken factual finding. When rejecting Collins's claim that the sexual abuse he suffered as a child justified a significant downward variance, the court noted: "[O]n the whole, 95 percent of the people that come before me have the background that you do." Tr., R.43, PageID 669. Collins argues that most defendants have not suffered his severe childhood sexual abuse and thus that the court's "95 percent" figure was flat wrong. Collins is correct that a district

court cannot rely on a clearly erroneous finding of fact to choose a sentence. *See Parrish*, 915 F.3d at 1047. But he is incorrect that the district court did so here.

To begin with, the district court was not making a "factual" finding with its 95% statement. Collins takes the comment far too literally. We do not read sentencing colloquies like statutes. *See United States v. Orozco-Vasquez*, 469 F.3d 1101, 1107 (7th Cir. 2006). And nothing in the sentencing transcript suggests that the court meant to resolve a "fact" dispute—as if the parties had introduced statistical evidence on the backgrounds of the "average" defendant and asked the court to "find" where Collins fit within this picture. Rather, the court was making a more general point—that, in its experience, most defendants have struggled through difficult childhoods. Tr., R.43, PageID 668–69. Its observation was analogous to the statement that the court had heard "coded 'drug talk' like this many times before," *Orozco-Vasquez*, 469 F.3d at 1108, or that the defendant had received a "good deal," *United States v. Heard*, 559 F. App'x 849, 853 (11th Cir. 2014) (per curiam); *see also, e.g.*, *United States v. Young*, 726 F. App'x 94, 96 (2d Cir. 2018) (order).

Regardless, the district court did not base its sentence on any such "finding" that 95% of defendants have suffered childhood sexual abuse. Our cases indicate that a court cannot be said to have *relied on* an erroneous factual finding unless the relevant fact appears to have been an "important factor" in the court's sentence. *See United States v. Cunningham*, 669 F.3d 723, 730 (6th Cir. 2012) (quoting *United States v. Wilson*, 614 F.3d 219, 224 n.3 (6th Cir. 2010)); *see also United States v. Pendygraft*, 782 F. App'x 424, 428 (6th Cir. 2019). The district court's stray 95% statistic was not even a factor—let alone an important one—in its sentence. The court stated that percentage only once and only in passing. To the extent Collins argues more generally that the district court did not give sufficient weight to his tragic childhood when balancing the § 3553(a) factors, that sort of challenge belongs with his third and final claim.

7

3. *Excessive Sentence*. Collins lastly argues that his 420-month sentence was too long when assessed under the § 3553(a) factors. For this type of challenge to a sentence's length, we ask only whether the district court abused its discretion. *See United States v. Lynde*, 926 F.3d 275, 279 (6th Cir. 2019). We also start with a presumption of reasonableness when, as here, the parties agree that the court sentenced the defendant within the relevant guidelines range. *See id.*

There was no abuse of discretion. The district court identified the guidelines range and considered the relevant § 3553(a) factors. While it recognized Collins's difficult background, 18 U.S.C. § 3553(a)(1), it found that this mitigating factor was offset by the seriousness of the crimes (the knowing exploitation of toddlers) and the need to provide for a "just punishment," *id.* § 3553(a)(1), (2)(A). It also concluded that a steep sentence was necessary to achieve "adequate deterrence" and "protect the public" from Collins, especially considering the likelihood that he might reoffend and the high recidivism rates for individuals who commit this type of crime. *Id.* § 3553(a)(2)(B)–(C). In short, the district court reasonably evaluated the relevant factors. *See Lynde*, 926 F.3d at 282–83.

Collins counters that the court did not give enough weight to the severe abuse that he suffered as a child and the way it likely affected him as an adult. To the contrary, the court gave significant weight to this factor, recognizing that Collins had been repeatedly abused over a five-year span and telling him that it did not "discount the consequences that your upbringing brought upon you." Tr., R.43, PageID 669. It thus sentenced Collins to a term well below the 960-month sentence identified in his presentence report. Although Collins thinks the court should have been even more lenient, we lack appellate authority to simply reweigh the factors. Our authority extends only to ensuring that the district court reasonably weighed them. *See United States v. Goode*, 834

F. App'x 218, 221 (6th Cir. 2020). The court's sentence reasonably accounted for Collins's upbringing.

Collins also argues that the sentence was substantively unreasonable because the district court pondered whether it was too long. Admittedly, the court expressed doubt about the propriety of its "breath taking" sentence: "I do question myself whether it's too much time. At this point I just don't know." Tr., R.43, PageID 670, 674–75. But the court's honest assessment does not make for a substantively unreasonable sentence. If anything, the statement exemplifies the district court's recognition of the serious duty placed upon it and its careful consideration of the § 3553(a) factors. District courts need not act with cavalier certitude when sending a person to prison for 35 years in order to insulate their sentences from appellate second-guessing. In any event, the court later confirmed its belief that the sentence was "sufficient but not greater than necessary to accomplish the objectives of sentenc[ing]" under the relevant factors. *Id.*, PageID 675; 18 U.S.C. § 3553(a).

One last point. The district court seemed to suggest, without any analysis, that Collins's guidelines range fell between 360 and 960 months. Yet this calculation may well have *benefited* Collins because his 420-month sentence might have been a significant downward variance. The presentence report initially identified his guidelines sentence as life imprisonment, but Collins's three counts had statutory maximums of 30 years, 30 years, and 20 years. The report thus calculated the guidelines sentence as 960 months by adding up the maximum sentences on all three counts and having them run consecutively. *See* U.S.S.G. § 5G1.2(d); *United States v. Aguilar-Andres*, 780 F. App'x 231, 233–34 (6th Cir. 2019); *Jenkins v. United States*, 394 F.3d 407, 412 (6th Cir. 2005); *see also, e.g.*, *United States v. Brown*, 843 F.3d 74, 82 (2d Cir. 2016); *United States v. Sarras*, 575 F.3d 1191, 1208–09 (11th Cir. 2009). In the atypical case in which a

9

defendant challenges a below-guidelines sentence, the defendant must make an even more demanding showing to prove its substantive unreasonableness. *See Lynde*, 926 F.3d at 279, 282. Yet the parties did not contest this guidelines-calculation issue, so we merely flag it for future cases. Even if Collins's sentence fell within the guidelines range, it was eminently reasonable.

We affirm.